HOPKINS, APPELLANT, *v.* THE CITY OF BUTTE, RESPONDENT.

[Submitted April 18, 1895. Decided April 29, 1895.]

MUNICIPAL TAXES—*Payment under protest—Assumpsit.*—Assumpsit cannot be maintained to recover money paid to a city for a special assessment for sewer tax, alleged to be illegal, where such payment is made to the city treasurer before the penalty for nonpayment is assessed or due, though plaintiffs stated at the time that it was paid under protest and that suit would be brought to recover it back.

SAME—*Same.*—Where the inhabitant of a city whose property has been illegally assessed pays the demand with a full knowledge of all the facts which rendered such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent its immediate seizure, such payment must be deemed voluntary; and the filing of a written protest at the time of making payment does not make the payment involuntary.

SAME—*Same.*—The law looks with disfavor upon suits to recover back taxes which are paid under a protest prompted by dissatisfaction and unwillingness to pay, rather than by compulsion to prevent the immediate execution of a levy or seizure.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION against a city to recover taxes paid. Judgment of nonsuit was rendered for the defendant by MCHATTON, J. Affirmed.

Statement of the case by the justice delivering the opinion.

Plaintiff sues to recover from the defendant $1,028.50, paid July 28, 1891, by her to the defendant, on a special assessment for sewer tax.

Appellant in her complaint sets up that, when she paid the tax, she protested against the payment, and claimed that the tax was illegally levied and void, and that the payment thereof was compulsory. She pleads that no resolution or ordinance of the city council was ever passed authorizing the building of the sewers for which the property was assessed, and that the special assessment was illegal and void, in that the city of Butte does not possess the power and authority to levy any special assessment for sewer tax upon any property, for the reason that the city has never established, by ordinance or otherwise, any general system of city sewerage, or any sewerage districts in said city, or any portion thereof, which it is required to do before it can levy and collect any special assessment for sewer purposes; and that, if she had not paid the said tax, the pretended assessment would have been certified by the city clerk to the county clerk, who would have added a penalty, and the county treasurer would have sold the land upon which the tax was claimed to be a lien, and, in order to prevent these things, she paid the money.

The answer denies that there was any compulsory payment, as alleged, and avers proceedings had by the city council of Butte, ordering the construction of the sewers for which the special assessment was levied, and sets up that the city of Butte has the authority to levy such special assessments; denies that the property of the plaintiff would have been sold, as alleged, but avers that the plaintiff paid the tax before the same had been advertised as delinquent, and that it was paid without fear or compulsion.

There was a trial to the court. The plaintiff introduced the special assessment notice informing her that there was due from her to the city of Butte $1,028.50 on a special tax, in accordance with the resolution passed by the city council on the 1st day of July, 1891, and that, unless the tax was paid within the time provided, five per cent. thereof would be added thereto as a penalty for delinquency. The plaintiff testified that when she paid the money to the city treasurer she objected to the payment, and said that she should pay it under

protest, and would further protest the matter afterwards; that she wanted to get away from the city, and was advised to pay it under protest, but that at that time she did not have time to attend to the protest of the matter. The money was paid before the penalty became due; that is, before August 1st. "The treasurer did not tell me that my property was seized, or in his possession, at that time. It was not advertised for sale. I do not know that he said he would sell the property. I paid the tax according to the notice I received about the penalty, and paid it under protest. Mr. Jacobs accepted the money under protest. He made no threats. There were sewers built in front of my property."

Plaintiff introduced an ordinance of the city of Butte for the establishment and maintenance of a sewer system in Butte City. By this ordinance the city was divided into three sewer districts, and authority to construct sewers is expressly assumed, and the real estate to be benefited by the sewers is to be assessed for the purpose of paying for said sewers. The method by which the assessment shall be made is set forth in the ordinance, and the payment of the special tax, if not made before August 1st after the levy, shall be enforced by certifying the resolution of the city council to the county clerk of Silver Bow county, with the certificate of the city treasurer attached, showing what taxes thereby levied remained unpaid; and the county clerk shall put the same, with five per cent. additional, upon the tax roll, in addition to and as part of all other city taxes to be collected, and to be paid to the city treasurer in the same manner as other tax money received by said county treasurer for the benefit of said city.

At the conclusion of plaintiff's testimony, a motion for nonsuit was made, upon two grounds: First, that the evidence shows that the payment of the tax was voluntary, and not under protest, mistake, or threat; second, that the claim, account or demand had never been presented to, and audited and allowed, or disallowed, by the city council of Butte, as required by law. The court sustained this motion, and from the

order sustaining the motion, and the judgment in favor of defendant, the plaintiff appeals.

*Corbett & Wellcome*, for Appellants.

The rule to be applied to the case at bar, is, that if a person pays an illegal tax in order to prevent the issuing of a warrant of distress with which he is threatened and which will of course issue unless the tax is paid, and the collector understands from the payer that the tax is regarded as illegal and that an action will be brought to recover the amount paid, the payment is deemed compulsory and not voluntary. (*Preston* v. *Boston*, 29 Mass. 7; *Erskine* v. *Van Arsdale*, 15 Wall. 75.)

Taxes paid under protest can be recovered back where the tax has been assessed and the time for its correction past, and nothing remains to be done but to issue the warrant for its collection as required by statute. (*Kansas Pacific Railway Company* v. *Commissioners of Wyandotte County*, 16 Kan. 587; *Grim* v. *School District*, 57 Penn. 434; *Henry* v. *Horstick*, 9 Watts. 412.)

*John W. Cotter*, for Respondent.

Money paid voluntarily to satisfy an illegal tax cannot be recovered back by the party paying the same. (2 Dillon on Mun. Cor., §§ 939, 940, 941, 942; Cooley on Taxation, pages 804; 805, 806, 807, 808, 809, 810, and note.) In order to maintain an action for the recovery of money paid to satisfy an illegal tax, the same must have been paid under fraud, mistake or duress, which will render a payment of the tax involuntary, and such compulsion must in general consist of some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment, over the person or property of the person making the payment. (2 Dillon on Municipal Corporations, §§ 943, 944, 945, 946, 947; *Lamborn* v. *Commissioners of Dickinson County*, 97 U. S. 187.)

The city treasurer of the City of Butte to whom the said

payment was made did not possess any right or authority to seize or sell the property at the time the payment was made. (Municipal Incorporation Act, § 428.)

The fact that the payment was made under protest verbally or in writing does not render it an involuntary payment that would entitle this plaintiff to recover the money back. (2 Dillon on Municipal Corporations, § ·947; Cooley on Taxation, pages 810, 811, 812, 813; *Bank* v. *Mayor, etc.*, 45 Am. Rep. 476; *R. R. Company* v. *Commissioners Dodge County*, 98 U. S. 541; *Conklin* v. *Springfield,* 24 N. E. Rep. 67; *Rogers* v. *Greenbush,* 4 Am. Rep. 292.) All payments of taxes are supposed to be voluntary until the contrary is made to appear. (Cooley on Taxation, 810; see note to *Erskine* v. *Van Arsdale,* 82 U. S. 75, 77, 21 L. C. P. Co. 63.) Ignorance or mistake of law will not entitle a party to recover back money paid on an illegal tax. (2 Dillon on Municipal Corporations, 944; *Lamborn* v. *Commissioners Dickinson County,* 97 U. S. 187.)

HUNT, J.—Several points are raised by the defendant's motion for a nonsuit, but we prefer to confine our opinion to a single question presented,—whether an action of assumpsit can be maintained to recover money paid for taxes upon a special tax assessment, where such payment has been made before the penalty for nonpayment is assessed or due, but where one who has made such payment notified the treasurer of the city, at the time of the payment, that she paid under protest, and that she intended to sue to recover back. We pass upon this question, because, by the record, the appellant is forced into the contention that the payment by her to the city treasurer of Butte was an involuntary one. She does not set forth in her complaint that the penalty had become due upon the taxes levied upon her property, nor that there was any actual seizure, or any urgent or immediate danger of a seizure, of her real estate by the proper authorities, nor that the property was advertised, or about to be advertised, for sale, nor that any act was immediately threatened or about to be done by which she would be deprived of the enjoyment of her real

estate, but relies upon a probability that, in the usual legal course of affairs, if she should become delinquent, the city treasurer of Butte would proceed to make out a delinquent assessment list, and certify the same to the county clerk of Silver Bow county, who would add the penalty prescribed, and certify the same to the treasurer of Silver Bow county, whose duty under the law it would ultimately be to proceed to sell the property for the payment of the taxes due.

The common-law rule which, in the absence of statute, must govern all demands similar to that made by a municipality for taxes of one of its inhabitants whose property has been assessed, is that where a party pays an illegal demand with a full knowledge of all the facts which rendered such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent the immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back; and the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary. (*Railroad Co.* v. *Commissioners,* 98 U. S. 541; *Little* v. *Bowers,* 134 U. S. 547, 10 Sup. Ct. 620.) And the test of whether or not money paid for the payment of taxes was a payment under duress, so as to make it an involuntary payment, "must, in general, consist of some actual or threatened exercise of power possessed, or believed to be possessed, by the party accepting or receiving the payment, over the person or property of another, from which the latter has no other means, or reasonable means, of immediate relief, except by making payment." (2 Dillon on Municipal Corporations, § 943.) It cannot be successfully argued that Mrs. Hopkins paid the tax which she now seeks to recover for the purpose of immediate relief. Indeed, the contrary appears, for she stated that she wanted to go away from Butte, and, while she thought the tax was unjust and illegal, of her own free will she paid the amount of it, merely stating, in effect, that it was paid under protest, and that she intended to

sue to recover it back.   The assessment does not appear to have ever been set aside by any legal proceedings, and it is admitted that the improvements for which the levy was made were built in front of the property assessed.   She knew, presumably, that the city treasurer could not sell her property, and could not even do as much as assess the penalty in case the tax was not paid.   All these facts clearly show, at law, an unwilling, but none the less voluntary, payment, as contradistinguished from a compulsory payment.   Such a payment does not entitle her to the relief she asks.   (Cooley on Taxation, § 811; *First National Bank* v. *Mayor, etc.*, 68 Ga. 120; *Rogers* v. *Inhabitants of Greenbush*, 58 Me. 392; *Conkling* v. *City of Springfield* (Ill. Sup.) 24 N. E. 67; *Bowman* v. *Boyd*, 21 Nev. 281, 30 Pac. 823; *Richardson* v. *City of Denver*, 17 Col. 398, 30 Pac. 333; *Swift* v. *City of Poughkeepsie*, 37 N. Y. 511.)

The constitutionality of the law under which the assessments were levied was not assailed.   It is only claimed that the city of Butte, by reason of a failure to pass an ordinance dividing the city into sewer districts, had not taken the steps necessary to authorize it to levy any special sewer assessments. There was a resolution and ordinance passed, however, in which sewer districts were created.   The ordinances may have been defective, and the assessments even irregularly made, but the general power of the city to make sewer assessments under valid ordinances is not disputed.   The case, therefore, is not one where authority to levy the tax was wholly wanting, and must be distinguished from decisions which uphold the right to recover back taxes where the levy of the tax is on its face invalid, and where protest on the ground of illegality was made at the time of payment.   (*Shoup* v. *Willis*, 2 Idaho 108, 6 Pac. 124; *Gillette* v. *Hartford*, 31 Conn. 351; *Newman* v. *Supervisors*, 45 N. Y. 676.)

It is also to be distinguished from the opinion of Chief Justice Chase in *Erskine* v. *Van Arsdale*, 15 Wall. 75, in that payment was made in that case to release property from detention, and the protest against payment (as in other cases involv-

ing the payment of revenues to release property) saved the rights which grew out of that fact, while in the case at bar· there was no levy at all, and no right to make a levy was conferred upon the treasurer of the city, to whom payment was made. Nor can *Whitney* v. *City of Port Huron* (Mich.) 50 N. W. 316, control under the conditions of fact here existing. In that case the plaintiff sued to recover taxes paid by her, under protest, on a special paving assessment. Payment was made under protest, and to protect the property from being sold, and on account of the taxes being illegal. The city treasurer had advertised the plaintiff's property for sale, and she had the right to presume that he would proceed with° the sale. The case was thereby brought within the rule of immediate and urgent necessity of paying the tax to prevent seizure. And it was held that a payment made under such a threat was an involuntary one.

Under the great weight of authority and reason, the law looks with disfavor upon suits to recover back taxes where dissatisfaction and unwillingness to pay, rather than compulsion, to prevent the immediate execution of a levy or seizure, are the causes which prompt the protest. The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.

