JOHNSON, RESPONDENT, v. CITY OF GREAT FALLS ET AL., APPELLANTS.

(No. 2,655.)

(Submitted February 15, 1909.   Decided February 23, 1909.)

[99 Pac. 1059.]

*License Taxes—Professions and Occupations—Statute—Consti-tutionality—Legislative Procedure—Final Passage—Vote—Raising Revenue—Power of Cities and Towns—Police Regu-lations—Dentistry.*

Statutes—Legislative Procedure—Final Passage—Vote—Constitution.
   1.   After a bill has, on third reading, passed the house in which it originated, the vote being taken by ayes and noes and the names of those voting entered on the journal, as required by section 24, Article V of the Constitution, and is amended in the other house of the legislative assembly, and then returned to the first for action on the amendments, it is not necessary that the vote on the adoption of the amendments thus made be again taken by ayes and noes and the names entered on the journal.

Same—Constitutionality—License Taxes—Cities and Towns.
   2.   *Held,* under the rule stated above, that House Bill 203, enacted into law in 1897 (Laws 1897, p. 203 [sec. 3259, Revised Codes]), authorizing cities and towns *inter alia* to impose a license tax upon professions and occupations, is not open to the constitutional ob-jection that it was not passed as required by section 24, Article V of the Constitution, declaring that on final passage of a bill the vote shall be taken by ayes and noes and the names of those voting entered in the journal.

License Taxes—Raising Revenue—Legislature cannot Delegate Power.
   3.   The Constitution, section 1, Article XII, in giving to the legis-lature the sole right to raise revenue by the imposition of a license tax upon persons and corporations doing business in the state, has thereby denied the power to any other body; and, therefore, the legislature cannot delegate the authority thus conferred to cities and towns.

Same—Power of Cities and Towns—Police Regulations.
  4.   While the legislature may not confer upon cities and towns the right to impose a license tax upon professions and occupations for the purpose of *raising revenue*, it may, in the absence of constitutional limitation, authorize them to impose such a tax in aid of *police regulations*.

Dentistry—Subject to Police Regulation.
  5.   *Held*, that the practice of dentistry is a proper subject for police regulations.

Police Power—Concurrent Exercise by State and Municipalities.
  6.   *Obiter:* The police power may be exercised concurrently by the state and a municipality.

Police Regulations—Dentistry—Cities and Towns—Limit of Power.
  7.   The power of a city or town to impose a license tax upon the right to practice the profession of dentistry as a police regulation, does not imply the power to refuse to license and thus to prohibit the pursuit of the profession.

Cities and Towns—Occupation Licenses—Power to Impose.
  8.   Section 4, Article XII, which, in empowering cities and towns to assess and collect taxes, deals with revenue and taxation exclusively, does not impliedly deny the power to such municipalities to impose license taxes in furtherance of police regulations.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by R. R. Johnson against the City of Great Falls and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

*Mr. C. A. Spaulding,* and *Mr. W. F. O'Leary,* for Respondent.

*Mr. John W. Stanton,* for Appellants.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Pursuant to the provisions of House Bill No. 203 of the Fifth Legislative Assembly (Laws 1897, p. 203), the city of Great. Falls passed an ordinance imposing a license fee or tax of $3 per quarter upon practicing dentists. Under protest the plain-tiff in this action paid to the city of Great Falls the license fee of $3 for practicing his profession as a dentist, and brought this action against the city and the city treasurer to recover the amount so paid. The district court decided in favor of the

plaintiff, and the city and city treasurer have appealed from the judgment.

Two contentions are made by counsel for respondent: (1) That House Bill 203 was not passed in the manner prescribed by the Constitution; and (2) in any event the city of Great Falls could not lawfully impose the license fee or tax.

1. Our Constitution (section 24, Article V) provides: "No bill shall become a law except by a vote of a majority of all the members present in each house, nor unless on its final passage the vote be taken by ayes and noes and the names of those voting be entered on the journal." In *Palatine Ins. Co.* v. *Northern Pacific Ry. Co.*, 34 Mont. 268, 85 Pac. 1032, this court held that the legislative journals may be consulted to determine whether the mandate of the Constitution has been observed. An examination of the enrolled bill and the journals discloses that House Bill 203 originated in the House of Representatives, where it was passed on third reading, the vote being taken by ayes and noes, and the names of those voting being entered on the journal. It was then transmitted to the Senate, where it was amended and, as amended, was passed on third reading, and the like record of the vote made. It was then returned to the House, where the amendments were concurred in, but the names of those voting on the amendments were not entered on the journal. It is now contended that the vote on the Senate amendments was in fact the vote of the House upon the final passage of this bill, and, since it was not taken in the manner prescribed in the Constitution, the bill did not become a law. While this is a new question in this jurisdiction, it is not a new one in this country. Most of the states have similar constitutional provisions, and this question has arisen frequently. In 26 American and English Encyclopedia of Law, 544, it is said: "The final passage of a bill, within the meaning of such a provision, is the vote on which each house adopts the bill after it has passed its first and second readings and after it has been read again for the purpose of being put upon its passage, and where a bill has been passed in one house and amended and passed in the other, it is not necessary that the vote on the

adoption of such amendment by the house in which it was first passed shall be taken by yeas and nays and entered on the journal.'' The decided weight of authority supports this view. Some of the leading cases are: *McCulloch* v. *State,* 11 Ind. 424; *Hull* v. *Miller,* 4 Neb. 503; *State* v. *Dillon,* 42 Fla. 95, 28 South. 781; *O'Hara* v. *State,* 121 Ala. 28, 25 South. 622; *Miller* v. *State,* 3 Ohio St. 475; *Cantini* v. *Tillman* (C. C.), 54 Fed. 969.

The only cases to which our attention is called, holding that the vote upon the amendments to a bill must be by ayes and noes and the record made of the vote, are *Cohn* v. *Kingsley,* 5 Idaho, 416, 49 Pac. 985, 38 L. R. A. 74, and *Norman* v. *Board of Managers,* 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556. *Glenn* v. *Wray,* 126 N. C. 730, 36 S. E. 167, and *Erwin* v. *State,* 116 Tenn. 71, 93 S. W. 73, present somewhat similar questions. All of these cases, however, have been decided since the adoption of our Constitution, and the Constitutions of those states are materially different from ours; but, if we apply the doctrine announced by the Idaho and Kentucky courts, the result would be to very materially embarrass legislation, for, carried to its logical effect, it would require that the same procedure be taken with an amended bill as with an original one, and the Supreme Court of Idaho recognizes this, for it says: ''A bill which passes the House, and is materially changed by amendment by the other house, and then sent back to the house where it first originated, must go through the same procedure as to reading and final vote as if it was an original bill.'' Applied here, that rule would require that, when the amended bill is returned to the house in which it originated, it would have to be referred to a committee, returned therefrom, printed for the use of the members, and take the usual course of an original bill. Our Constitution does not require this, and an examination of the legislative journals discloses that it has never been the practice in our legislative procedure, and, while not conclusive, the construction given by the legislature to those provisions of the Constitution dealing with legislative procedure is entitled to great weight. At the time our Constitution was adopted the rule was quite uniform, so far as established by judicial decisions, that

in the house originating a bill the vote on amendments proposed by the other house need not be by ayes and noes, and the names of those voting need not be entered on the journal, and, in the absence of anything indicating a contrary view, we must assume that the framers of our Constitution, in adopting section 24 of Article V, did so intending that the rule of interpretation then in vogue should be applied to it.   Under these circumstances we hold that in passing House Bill 203 the mandate of the Constitution was met, and the bill properly became a law.

2. The second question presented is: Does House Bill 203 authorize the city of Great Falls to impose a license tax upon dentists, or, in other words, can the legislature empower a city to impose such license tax?   It is elementary that every license tax is imposed for raising revenue or as a police regulation, or for both purposes.

(a) Section 1, Article XII, of the Constitution, gives to the legislature authority to raise revenue by the imposition of a license tax upon persons and corporations doing business in the state.   The provisions of the Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.   (Article III, sec. 29.)   In the absence of express words declaring the contrary rule, we must hold that the provision of section 1, Article XII, to which reference is made above, is prohibitory, and, the Constitution having conferred the power upon the legislative assembly, has denied the power to any other body; and, this being so, the legislature could not delegate the authority thus conferred to cities or towns.   What we have said, however, applies to the authority to impose a license tax for the purpose of raising revenue only.

(b) But with respect to a license imposed as a police regulation the situation is entirely different.   In the absence of constitutional limitation, the legislature, speaking generally, is left free to deal with the subject directly or through the agency of cities or towns, and may properly authorize such cities or towns to impose a license tax upon any industry or upon the right to transact any business which falls within the scope of police regulations.   It would scarcely be possible to enumerate all

occupations which fall within the sphere of police regulations. We do not know that any court or text-writer has ever attempted to do so. The individual cases are treated as they arise, but in 25 Cyc. 614, a very extended list of occupations which have been held to be subject to police regulations is given. Counsel for respondent cite, and rely upon, *Sonora* v. *Curtin,* 137 Cal. 583, 70 Pac. 674, which holds that the city of Sonora cannot impose a license tax upon an attorney at law, for the reason that the business of an attorney is not the proper subject of police regulation; but that case stands practically alone in such holding. The overwhelming weight of authority is to the contrary. For some authorities announcing the general rule, see Tiedeman's Limitations of Police Power, sec. 87; 25 Cyc. 614; 22 Am. & Eng. Ency. of Law, 932; Prentice on Police Powers, ch. 16; *State ex rel. Smith* v. *Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110. In fact, in Montana the very statute which this respondent invokes—the statute regulating the practice of dentistry (Revised Codes, secs. 1573-1584)—is itself a police regulation, and its existence on our statute books cannot possibly be justified upon any other theory. The same is true with respect to the statute regulating the practice of medicine (sections 1585-1593), osteopathy (sections 1594-1606), optometry (sections 1607-1621), pharmacy (sections 1622-1638), the trade of engineer (sections 1648-1659), and statutes applicable to some other trades and professions. It is beyond controversy, then, that the statute does treat these professions and trades as proper subjects of police regulation. The decisions of this court in *State ex rel. Board* v. *District Court,* 26 Mont. 121, 66 Pac. 754, holding that the state may properly subject the practice of medicine to its police regulations, is directly applicable here and sets at rest the question raised by counsel for respondent. That the police power may be exercised concurrently by the state and a municipality is a general rule of law recognized almost everywhere. (25 Cyc. 601.)

But it is suggested that the power to license presumes the power to refuse to license, and therewith the power to prohibit the pursuit of the profession altogether; but this does not fol-

low.   In 28 Cyc. 721, it is said: "In the exercise of its author-ized police power to that effect, a municipality may regulate an occupation or business which it may not prohibit, and for this purpose it may require a license where it has no power of taxa-tion"—and numerous cases are cited in support of the text.

There is also the suggestion that, since the Constitution, in section 4, Article XII, authorizes the legislature to empower cities and towns to assess and collect taxes, the authority to im-pose a license tax is at least impliedly denied; but it is sufficient answer to say that Article XII deals with revenue and taxation exclusively, and does not attempt to deal with police regulations, so that it cannot be said that the authority to assess and collect taxes is a prohibition against doing anything else.

It must be held, therefore, that House Bill 203 only author-izes a city to impose a license tax as a police regulation, and the city ordinance of Great Falls in question must be held to impose the license tax for that purpose exclusively.

Our conclusions are (1) That House Bill 203 was properly enacted; and (2) that the city of Great Falls can collect the license tax from the respondent.   Under these views the com-plaint does not state facts sufficient to constitute a cause of action, and will not support a judgment in favor of plaintiff.

The judgment is reversed and the cause is remanded, with directions to dismiss the action and enter judgment in favor of the defendants for costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.