THE HON. HENRY C. SMITH,
⎱ Associate Justices.
THE HON. WILLIAM L. HOLLOWAY, ⎰

REILLY, APPELLANT, *v.* HATHEWAY, CITY TREASURER, ET AL.,
RESPONDENTS.

(No. 3,132.)

(Submitted June 17, 1912. Decided June 21, 1912.)

[125 Pac. 417.]

*Cities and Towns—License Taxes—Invalidity—Recovery Back—*
*Presentation of Claim—Partnership—Use of Fictitious Name*
*—Right to Sue.*

Cities and Towns—License Taxes—Invalidity.
  1. A license tax imposed by a city ordinance upon grocerymen and
  others purely for revenue, and not for police regulation, was illegal.
Same—Illegal Fee—Recovery—Claims.
  2. Where a groceryman, under protest, paid a license fee exacted by
  city ordinance, he could bring action against the city to recover it back
  without having first filed his claim in accordance with sections 3282
  and 3283, Revised Codes.
Partnership—Use of Fictitious Name—Abatement of Action.
  3. The failure of a plaintiff to comply with the provisions of sections
  5504–5509, Revised Codes, relating to an individual transacting business
  under a designation purporting to be a firm name, merely suspends the
  right to maintain the action until the statute has been complied with,

and, where he complies with the statute before answer, the action does not abate.

Same—Use of Fictitious Name.

4. The defense that the plaintiff is doing business in the firm name without having complied with sections 5504–5509, Revised Codes, is an affirmative one, and is waived unless pleaded in the answer.

License Taxes—Recovery Back—Proper Remedy.

5. An action by a groceryman to recover back an illegal license fee exacted by city ordinance was properly brought under section 2742, Revised Codes, giving the right to recover an illegal tax paid under protest, and he was not required to resort to the remedy given under section 2741, authorizing a suit in equity to restrain the collection of an illegal or unauthorized tax.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by P. M. Reilly against Thomas G. Hatheway, Jr., City Treasurer, and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*Mr. C. A. Spaulding,* and *Mr. Floyd J. Logan,* submitted a brief in behalf of Appellant, and argued the cause orally.

It has been repeatedly held that the best criterion for determining whether an ordinance was intended as a revenue measure or an exercise of the police power of a municipality is whether it contains any regulatory provisions. (See *Wheeler* v. *Plumas County,* 149 Cal. 782, 87 Pac. 802, affirmed by the supreme court of the United States, in 196 U. S. 562, 49 L. Ed. 599, 25 Sup. Ct. Rep. 316; *Town of Santa Monica* v. *Guidinger,* 137 Cal. 658, 70 Pac. 732; *Cache County* v. *Jensen,* 21 Utah, 207, 61 Pac. 303; *Chaddock* v. *Day,* 75 Mich. 527, 13 Am. St. Rep. 468, 4 L. R. A. 809, 42 N. W. 977; *People* v. *Wilson,* 249 Ill. 195, 94 N. E. 141.)

In the exercise of the police power only such sums can be exacted as license fees as are sufficient to effectuate the supervision or regulation contemplated by the authority imposing the same. If any substantially greater sum is imposed than suffices for such regulatory purposes, the ordinance is invalid. (Cooley's Constitutional Limitations, 242; *Placer County* v. *Whitney,* 2 Cal. App. 614, 84 Pac. 277; *Ex parte McCoy,* 10 Cal. App. 116, 101 Pac. 419; *Wisconsin Tel. Co.* v. *Milwaukee,* 126 Wis. 1, 110 Am. St. Rep. 886, 1 L. R. A., n. s., 581, 104 N. W. 1009; *Ottumwa*

v. *Zekind,* 95 Iowa, 622, 58 Am. St. Rep. 447, 29 L. R. A. 734, 64 N. W. 646; *Michigan Tel. Co.* v. *Benton Harbor,* 121 Mich. 512, 47 L. R. A. 104, 80 N. W. 386; *Robinson* v. *Norfolk,* 108 Va. 14, 128 Am. St. Rep. 934, 15 L. R. A., n. s., 294, 60 S. E. 762; *Hoefling* v. *San Antonio,* 85 Tex. 228, 16 L. R. A. 608, 20 S. W. 85; Cooley on Taxation, 2d ed., 598; *State* v. *Moore,* 113 N. C. 697, 22 L. R. A. 472, 18 S. E. 342; Tiedeman on Police Powers, 278; *Muhlenbrinck* v. *Commissioners,* 13 Vroom (42 N. J. L.), 364, 36 Am. Rep. 518; *Stamp* v. *Burk,* 83 Ark. 351, 104 S. W. 153.)

If the purpose in adopting an ordinance imposing a tax on certain occupations and business is to raise revenue, the money exacted is a tax; but if regulation is the end and object in view, the money results from an exercise of the police power and is license money. The power to tax and not the power to license is exercised by an ordinance imposing a tax on certain occupations or businesses, where it contains no element of regulation and shows on its face that the sole purpose in adopting it is to raise revenue, although the right to engage in the business or calling taxed is made to depend upon the procuring of a license and payment of the tax. (*State* v. *Boyd,* 63 Neb. 829, 58 L. R. A. 108, 89 N. W. 417.) Gray on Limitations on Taxing Power (1906 edition), at page 711, in discussing the case of *Clark* v. *Titusville,* 184 U. S. 329, 46 L. Ed. 569, 22 Sup. Ct. Rep. 382, says: "The law in these respects was wholly unsupported by the police power, since no one could claim that a law licensing the common and useful trade of a grocer had anything to do with the police power."

It no longer admits of doubt that the question of whether or not a particular business is one properly falling within the purview of the police power of a municipality is always a judicial question, and the determination of the legislative branch of the government upon the subject is not conclusive upon the courts. (*Jacksonville* v. *Ledwith,* 26 Fla. 163, 23 Am. St. Rep. 558, 9 L. R. A. 69, 7 South. 885; *Ex parte Whitwell,* 98 Cal. 73, 35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870; *Mugler* v. *Kansas,* 123 U. S. 623, 31 L. Ed. 205, 8 Sup. Ct. Rep. 273; *In re*

*Smith,* 143 Cal. 368, 77 Pac. 180; *Lawton* v. *Steele,* 152 U. S. 133, 38 L. Ed. 385, 14 Sup. Ct. Rep. 499; *Ex parte Dickey,* 144 Cal. 234, 103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928, 77 Pac. 924.) From these authorities it is apparent that it is the right of the court in the case at bar, under the facts adduced, to determine whether the license fees exacted from appellant for carrying on his business are collected by the city of Missoula in the legitimate exercise of its police power, or whether such exaction is, as appellant contends, an arbitrary interference with a harmless and legitimate business which requires no supervision or regulation, and with no resultant benefit to the public, if supervision should be attempted. If the latter is the case, then ordinance No. 85 was beyond the authority of the city of Missoula to enact and cannot be sustained. (*Young* v. *Commonwealth,* 101 Va. 853, 45 S. E. 327.) It is also the right of this court to determine whether or not the particular measure providing for payment of any such license bears any logical or legitimate relation to the exercise of a proper police regulation. (*State ex rel. Wyatt* v. *Ashbrook,* 154 Mo. 375, 77 Am. St. Rep. 765, 48 L. R. A. 265, 55 S. W. 627; *Chicago* v. *Netcher,* 183 Ill. 104, 75 Am. St. Rep. 93, 48 L. R. A. 261, 55 N. E. 707.)

*Mr. Frank Woody,* for Respondents, submitted a brief and made oral argument.

That the city of Missoula has authority to pass ordinances regulating places of business carrying in stock and offering for sale meats, vegetables, fruit, butter, *etc.,* and to require the payment of license to cover the cost of such regulation, there can be no question. ''The power to license and regulate the vending of meats and vegetables is not denied nor its necessity questioned. The health of a city demands that it should exist.'' (*Ash* v. *People,* 11 Mich. 347, 83 Am. Dec. 740; *State ex rel. Spangenberg* v. *McMahon,* 62 Minn. 110, 64 N. W. 92.)

Under the power to regulate, or regulate and license, the city may exact the payment of a fee to cover not only the cost of the issuing of the license, but also the cost of regulating and inspecting the business. (*State* v. *Glavin,* 67 Conn. 29, 34 Atl.

708; *Tomlinson* v. *Indianapolis,* 144 Ind. 142, 36 L. R. A. 413, 43 N. E. 9; *Burlington* v. *Unterkircher,* 99 Iowa, 401, 68 N. W. 795; *State* v. *Finch,* 78 Minn. 118, 46 L. R. A. 437, 80 N. W. 856; *St. Paul* v. *Dow,* 37 Minn. 20, 5 Am. St. Rep. 811, 32 N. W. 860; *Mankato* v. *Fowler,* 32 Minn. 364, 20 N. W. 361; *State* v. *Heinemann,* 80 Wis. 253, 27 Am. St. Rep. 34, 49 N. W. 818.) While it is true that ordinance No. 85 does not contain any regulatory provisions, yet taking it and considering it in connection with other ordinances of the city of Missoula, which provide for the regulation of the very occupation or business in which the plaintiff is engaged, unless it appears that the license which the plaintiff is compelled to pay is excessive or unreasonable, this ordinance must be construed as a police regulation and not a revenue measure.

The evidence on the part of the appellant shows only a part of the expense connected with the regulation and inspection of his place of business and not all of the expense, and it is therefore impossible for this court to say, in the absence of such showing, that the license required of the appellant is unreasonable or exorbitant. The presumption is that the fee does not exceed the cost of regulation, and unless it be otherwise shown, such presumption must prevail. (*Fayetteville* v. *Carter,* 52 Ark. 301, 6 L. R. A. 509, 12 S. W. 573; *Burlington* v. *Insurance Co.,* 31 Iowa, 105; *Van Bealen* v. *People,* 40 Mich. 258; *Ex parte Chin Yan,* 60 Cal. 78; *Clason* v. *Milwaukee,* 30 Wis. 316.)

Even if the ordinance in question does fix the license at a rate which, after paying the expense of issuing the license, *etc.,* and the cost of regulating the appellant's business, leaves some amount which may be in the nature of revenue, this of itself does not render the ordinance void. The requirement of such a fee should not be held invalid on the ground that the city incidentally derives revenues therefrom, unless the fee is clearly excessive for the purposes of regulation. "The fact, however, that the city derives a revenue incidentally from the reasonable exercise of its police powers in regulating and controlling the business is no serious objection to such an ordinance." (*City of St. Paul* v. *Colter,* 12 Minn. 50, 90 Am.

Dec. 278; *Arkadelphia Lumber Co.* v. *Arkadelphia*, 56 Ark. 370, 19 S. W. 1053; *Fayetteville* v. *Carter, supra; Burlington* v. *Insurance Co., supra; In re White*, 43 Minn. 250, 45 N. W. 232; *Mankato* v. *Fowler, supra; Littlefield* v. *State*, 42 Neb. 223, 47 Am. St. Rep. 697, 28 L. R. A. 588, 60 N. W. 724.)

The fact that the amount of license is graduated according to the amount of business done does not necessarily mean that the license is imposed for revenue purposes. ''The right and power vested in the city to fix the charge would authorize them to vary it with different parties, as they may deem prudent and just. The difference in the charges appear to me to be based on just grounds.'' (*Burlington* v. *Insurance Co.*, 31 Iowa, 102; *St. Paul* v. *Dow*, 37 Minn. 20, 5 Am. St. Rep. 811, 32 N. W. 860; *Servontz* v. *State*, 133 Wis. 231, 126 Am. St. Rep. 955, 113 N. W. 277; *Salt Lake* v. *Christensen Co.*, 34 Utah, 38, 17 L. R. A., n. s., 898, 95 Pac. 523; *Augusta* v. *Clark & Co.*, 124 Ga. 254, 52 S. E. 881; *State* v. *Galveston Ry. Co.*, 100 Tex. 153, 97 S. W. 71.)

An action to recover taxes paid under protest in the city cannot be maintained before a claim for the refunding of such taxes has been presented to the city council for allowance. (*Mead* v. *City of Lansing*, 56 Mich. 601, 23 N. W. 444; *Richardson* v. *Hull*, 24 Neb. 536, 39 N. W. 608.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought to test the validity of ordinance No. 85 of the city of Missoula, imposing a license tax on nearly every business and profession carried on in the city, including the grocery business conducted by the appellant. He paid his license tax of $20 under protest and began this action to recover the same, and also to enjoin the city authorities from demanding the tax in future. The court below tried the cause without a jury, found the issues in favor of the defendants, and entered judgment in their favor. Plaintiff has appealed.

It is alleged in the complaint that said license tax is exacted for the sole and only purpose of raising revenue to defray the general municipal expenses of the city; that plaintiff's business is a lawful one, endangering neither the health, safety, morals,

nor comfort of the inhabitants; and that as conducted it does not require, and is not the subject of, any police regulation whatever. The answer denies that the license tax was collected for the purpose of raising revenue, but admits that the moneys so collected were placed in the general fund of the city and that the general expenses of the city are paid from that fund. It is alleged affirmatively that the plaintiff deals in certain articles and commodities the storage and sale of which require and receive police regulation. It also alleges that all moneys received from licenses, all moneys received from general taxes, except moneys received from taxes for road and street purposes, all moneys received from all other sources, except poll taxes, are paid into the general fund of the city, and all expenses in connection with collecting and issuing licenses, the printing thereof, clerical hire in connection therewith, cost of inspection, cost of enforcing all police regulations, and all expenses of every nature and kind whatsoever, save and except expenses of grading, cleaning, and repairing streets and alleys, are paid out of the general fund. It is further alleged that ordinance No. 85 was not passed for the purpose of raising revenue, "but was passed for the purpose of police regulation, and all money received from licenses issued thereunder was and is not received for the purpose of paying the general expenses of the city, but was and is received for the purpose of defraying the cost of all necessary and proper police regulations and all necessary and proper expenses in connection therewith."

The plaintiff testified that the city did not, to his knowledge, make any inspection of the articles handled in his store; that "they never had any inspector there to inspect anything in the store"; that he spends nearly all of his time there, except evenings, and would know if any inspection "was going on along that line"; that the authorities have never at any time during the last three years made any "regulation" of his business, "excepting the fire chief would come around and tell us to clean up probably before the Fourth of July or sometime before a celebration, about once a year." He also testified, over objection, that not anything carried by him in stock required or necessitated police regulation or inspection; that he did not know of

anything associated with his business that required or necessitated supervision; that he did not know of anything connected with his business that would menace the safety, good order, morals, or health of the community; that, since the payment of the sum mentioned in the complaint under protest, he has continued to pay a license tax, but there has been no inspection or regulation of his business by the city subsequent to that date, except by the fire chief aforesaid; that the city has been to no expense at all in the regulation or inspection of his business; that the health officer might have walked through his store and looked around, he could not say, but no known official visit was ever made; that no representative of the city could have come into his place of business without his knowledge.

The defendant city treasurer testified for the plaintiff that the employees of the city are paid out of the general fund; that the expenses of keeping the streets clean and ''everything nice for the business men'' are also so paid; but, aside from such expenditures, he had no knowledge of any payments that inured to the benefit of the plaintiff that were paid out of the general fund. He also testified that he knew of no expenditure on the part of the city of Missoula ''having been made for the direct purpose only of inspecting and regulating the interior of the business of the plaintiff''; that he knew of no expenditure in the past three years for the purpose of inspecting any article handled by the plaintiff in his business, or for regulating his business. He also testified that he collected the license taxes; that probably forty days out of every three months were required to do so; that the business of collecting license taxes requires receipt books and license books; that the salaries of the sanitary inspector and board of health are paid out of the general fund; that the board of health has the regulation and inspection of all places of business and residences, ''to see that they are kept in a sanitary and healthful condition''; that the city of Missoula does not exercise any regulatory measures toward professional men, doctors, dentists, or lawyers, regulating their business, supervising or inspecting them; that his services in collecting licenses do not cost the city anything, because he is working for the city anyway.

Samuel Bellew, the city clerk, testified that he knew of no amount having been expended by the city for any supervision, regulation, or inspection of plaintiff's business; that 100 licenses and receipts would cost about $3; that the sanitary inspector under the board of health, has the duty of inspecting and regulating places of business.

Defendants offered no evidence. It was admitted by the pleadings that the city of Missoula has passed certain ordinances providing for the inspection of all meats, vegetables, milk, and butter sold or offered for sale; also ordinances limiting the quantity of coal-oil, petroleum, gasoline, naphtha, and other inflammable, explosive, and dangerous liquids, and plaintiff testified that he carried coal-oil, vegetables, fruit, butter, condensed milk, and smoked and dried meats in stock.

1. This court held, in *Johnson* v. *City of Great Falls,* 38 Mont. 369, 16 Ann. Cas. 974, 99 Pac. 1059, that while the legislature may not confer upon cities and towns the right to impose a license tax upon professions and occupations for the purpose of raising revenue, it may, in the absence of constitutional limitation, authorize them to impose such a tax in aid of police regulations. Ordinance No. 85 of the city of Missoula ostensibly and [1] presumptively imposes a license tax upon the business or occupation of the appellant in the exercise of the police power of the municipality. On its face this ordinance appears to be valid. But of course the city cannot do by indirection what it is not permitted to do directly. If this license tax was in fact imposed for purely revenue purposes and not for regulation, its collection was an illegal act. The evidence heretofore quoted discloses to our minds, beyond question, that as a police regulation the ordinance is a dead letter upon the ordinance book. Apparently no attempt was made to regulate, supervise, or inspect the grocery business of the appellant. It is impossible to escape the conclusion that the tax was collected for purely revenue purposes. The money was paid into the general fund of the city and used to pay its general operating expenses. Approximately 800 licenses and receipts were issued annually at an expense for printing of about $24. No extra expense was incurred on ac-

count of salaries of the city clerk and city treasurer. In fact, the entire expense to the city grew out of the collection of these same license taxes, and were it not for such collections the city would have been at no expense whatever. We shall not stop to inquire on whom the burden of proof rests. It may be presumed, we think, that the two city officers who were sworn as witnesses would have some knowledge as to whether the business of the plaintiff was in fact subjected to police regulation. Both declared that, so far as they knew, nothing of the kind was ever attempted. The respondents offered no evidence. Under these circumstances we are inclined to the opinion that the appellant made a *prima facie* showing that the tax paid by him under protest was collected for the purpose of raising revenue solely, and was therefore illegal.

2. It is contended that the judgment should be affirmed for the reason that the appellant presented to the council no claim [2]  against the city before bringing action. The provisions of sections 3282 and 3283, Revised Codes, are invoked to support the contention. The reason underlying these statutory provisions is found in the consideration that the legislative purpose was to protect cities and towns from actions upon demands of which they had had no previous notice, and no opportunity to investigate, or to settle without litigation. The reason of the law is its life, and when the reason fails the law dies. The city of Missoula, having formally passed an ordinance requiring the appellant to pay a license fee, could only return the same to him, voluntarily, in violation of its ordinance. It would have been an idle act to demand a return of his money from the same power that advisedly exacted it from him.

3. Again, it is contended that the appellant cannot maintain this action because at the time of filing his original complaint [3]  he had not complied with the provisions of sections 5504 to 5509, Revised Codes, relating to an individual transacting business in this state under a fictitious name or style, or designation purporting to be a firm name. Appellant testified that he was doing business as an individual under the name of P. M. Reilly & Co. The record shows that he complied with the statute before

filing his second amended complaint. The only answer found in the record is directed to this complaint. Without deciding whether the statutory provisions heretofore referred to apply to the plaintiff, it is sufficient to hold, on the authority of *Carson-Rand Co.* v. *Stern,* 129 Mo. 381, 32 L. R. A. 420, 31 S. W. 772, and *Nicholson* v. *Auburn Gold Min. & M. Co.,* 6 Cal. App. 547, 92 Pac. 651, that it is not the right to begin an action, but the right to maintain it, that is withheld by the statute for failure to comply with its terms; and if, before the defense is interposed, the plaintiff complies with the statutory provisions, the action may be maintained. The defense is an affirmative one and is waived unless pleaded in the answer. (*Vaughan* v. *Kujath,* 44 [4] Mont. 484, 120 Pac. 1121; *California S. & L. Society* v. *Harris,* 111 Cal. 133, 43 Pac. 525.) The appellant alleged that he had complied with the statute, and, while this allegation was not necessary in order to state a cause of action, it was, nevertheless, denied, and we think the denial was sufficient to raise the issue. But so long as the statute was complied with by the appellant before the answer was interposed, the action should not abate. The right to maintain the action is simply suspended until the statute is complied with.

4. Finally, it is contended that the action should have been commenced under the provisions of section 2741, Revised Codes, [5] authorizing a suit in equity to restrain the collection of an illegal or unauthorized tax, and not under section 2742, giving the right to recover an unlawful tax paid under protest. A nice distinction is made in the brief of the respondents between an illegal tax and an unlawful one. We do not, however, find it necessary to analyze or distinguish the two words. Section 2741 gives a cause of action, at law, in all cases where taxes are paid under protest. Section 2742 provides for a suit in equity in certain cases. The remedy in equity is limited, but that at law is unlimited. (*Montana Ore Pur. Co.* v. *Maher,* 32 Mont. 480, 81 Pac. 13.) In this connection it is suggested by counsel that section 2742 does not give a right of action against a city for taxes or licenses paid under protest, for the reason that the concluding paragraph thereof provides that the tax so paid shall be held

by the county treasurer and no part thereof paid to the state treasurer until the determination of the action brought for the recovery thereof. We are satisfied, however, that section 2742, as originally enacted, was designed to create a right of action in all cases. Its phraseology so indicated. It provided that an action might be brought against the officer to whom the tax or license was paid, or against the county or municipality on whose behalf the same was collected. (See section 4024, Political Code of 1895.) The legislative assembly of 1905 (Laws 1905, Chap. 108) amended the measure by adding the last paragraph, just referred to; and the language therein employed, reading the amended act as a whole, might indicate that the entire section related only to actions against a county. But such is not the case. The reason for the amendment was: It was found necessary to provide that taxes and license fees paid to the county treasurers under protest should remain in their hands until the final determination of any action brought to recover the same; otherwise the portion paid to the state would not be available for refunding purposes, in case of an adverse judgment.

5. The case of *Hopkins* v. *City of Butte,* 16 Mont. 103, 40 Pac. 171, involved a controversy which arose in 1891 before the statute giving a right of action for the recovery of taxes and licenses paid under protest was enacted. Mr. Justice Hunt said: "The common-law rule, * * * in the absence of statute, must govern."

For the reasons herein given, the judgment of the district court is reversed and the cause is remanded, with instructions to enter a judgment in favor of the appellant.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY: I concur in the result reached by my associates, because I think that, under the facts disclosed by the record, the ordinance was enacted in the first instance as a revenue measure, and for that reason void under the decision in *Johnson* v. *City of Great Falls,* 38 Mont. 369, 16 Ann. Cas. 974, 99 Pac. 1059. The purpose of its enactment is made

clear by the fact that, though the city council has enacted other ordinances providing for police supervision of many, if not all, the occupations pursued by the residents of the city, the funds provided by it have never been expended in any measure in enforcing them. Approximately an amount equal to two-fifths of the entire revenue of the city is derived from its imposition. All of this has been and is being expended for general purposes without the least regard to the health or safety of the inhabitants. If it was enacted as a part of the police regulations of the city, the fact that the other ordinances have not been enforced is no reason why the plaintiff should have relief in this proceeding. The course for him to pursue would manifestly be to invoke the proper process to compel the city authorities to perform their duty.