STATE EX REL. CITY OF BOZEMAN, RELATOR, *v.* POLICE COURT, RESPONDENT.

(No. 5,377.)

(Submitted September 21, 1923. Decided October 15, 1923.)

[219 Pac. 810.]

*Supervisory Control—Cities and Towns—Occupation Licenses —Police Regulation—Ordinance — Validity — Reasonableness of Fees—Presumptions—Motor Vehicles.*

Licenses—Cities and Towns—Limitation of Power.
1. A city cannot raise revenue for general municipal purposes by the imposition of license taxes.

[68 Mont. 435.]

Same—Ordinance Imposing Occupation Licenses—Validity.

2. An ordinance required certain occupations, pursuits, *etc.*, to pay a license fee in aid of the police power and regulations of the city. In a prosecution of one operating auto taxis and busses for hire without first having paid the license fee provided for therein, the police judge in effect held the ordinance invalid by sustaining a general demurrer to the complaint. *Held*, on writ of supervisory control, upon inspection of the ordinance alone, and in view of the purposes to which the funds collected under it were to be devoted,—police regulation,—that it was not open to the objection that it was a revenue measure.

Same—Police Regulation and Supervision—Ordinances—Presumptions.

3. Whether a particular business requires special police protection and regulation is generally a question of fact, and where a city council has by an ordinance declared that certain pursuits call for such control, the presumption must be indulged, in the absence of a showing to the contrary, that the finding was justified by the facts.

Same—Ordinances Licensing Occupations—Police Regulation—Unnecessary Provision.

4. Where an ordinance provides that every person licensed under its provisions shall be subject to regulation and supervision under the general police power of the city, it is not necessary for the purpose of upholding it as a regulatory measure that it specify in detail the several officers charged with the carrying out of its provisions.

Same—Distinction Between "Licenses" and "Taxes."

5. Where a fee is imposed for the purpose of regulation and the Act requires compliance with certain conditions in addition to the payment of the prescribed sum, it is a license imposed by virtue of the police power; but when exacted solely for revenue purposes without any further condition it is a tax.

Same—Amount of Fee—Elements Entering into Reasonableness.

6. The general rule that a license fee required by an ordinance for police regulation must not exceed the cost of issuing the license and the additional cost of inspection and regulation is subject to the qualification that the council, in fixing the fee, may include the cost of all incidental consequences which may reasonably subject the public to expense as a result of the conduct of the business licensed, the nature of the business and the necessity, character and extent of the regulations being the dominating elements which determine the reasonableness of the fee.

Same—Reasonableness—Presumption.

7. The presumption is that a license fee is reasonable until the contrary appears.

Same — Motor Vehicles — Regulatory Ordinances — Power of Cities and Towns to Enact.

8. Under Chapter 154, Laws of 1923, cities and towns are authorized to enact ordinances licensing and regulating the motor vehicle

2. Regulation of automobiles as police or revenue measures, see note in Ann. Cas. 1915D, 133.

Validity of excise or license tax upon motor vehicles, see notes in 1 L. R. A. (n. s.) 41; 37 L. R. A. (n. s.) 440; 52 L. R. A. (n. s.) 949; L. R. A. 1915D, 322.

business for hire, and therefore the contention that such business is not subject to nor requires police regulation is without merit.

Same—Motor Vehicles—Fee Fixed at Specified Sum per Vehicle Valid.
9. A license tax fee of $25 per year for the first taxi and $12 for each additional one operated for hire is a proper basis for determining the amount to be paid by the person conducting the business, and is not open to the objection that it is a property tax against each vehicle and not a tax upon the business.

Same—State Railroad Commission—Power to License Motor Vehicles.
10. *Quaere:* Had the legislature the power to delegate to the state Railroad Commission the authority conferred upon it by Chapter 154, Laws of 1923, to exact a license fee from persons operating motor vehicles for compensation, and to fix the amount thereof within the limit of $10 per vehicle?

Same—Ordinance Fixing Fee in Excess of State License—Inapplicability of Rule.
11. Section 5039, Revised Codes of 1921, provides that the license fee which a city may impose upon industries and businesses must not exceed the sum required by statute when the state requires a license therefor. Chapter 154, Laws of 1923, while authorizing the state Railroad Commission to require the payment of a license not to exceed $10 per motor vehicle, does not declare that a license shall be exacted. A city imposed a license fee of $25 for the first taxi operated for hire and $12 for each additional one. *Held*, that in the absence of a showing that the Railroad Commission had exercised the power given it by Chapter 154, the fee exacted by the city cannot be said to exceed the fee imposed by the state for the same purpose.

Same—Power to License Concurrent in State and Municipal Governments.
12. The power to license any business subject to police regulation may be exercised concurrently by the state and municipal governments.

Same—When Ordinance Imposing License Fee not Retroactive.
13. An ordinance prescribing a license fee upon a yearly basis *held* not retroactive merely because, having been enacted in the middle of the year, it made no provision for apportioning the amount to be paid for the remaining portion of that year, or for excluding the part of the year during which the ordinance was not in effect.

Original application for Writ of Supervisory Control, by the State, on the relation of the City of Bozeman, to annul an order of the Police Court of the City of Bozeman and W. H. Axtell, as Acting Police Magistrate, sustaining a demurrer to the complaint in the case of the City of Bozeman against Frank E. Davis and another. Order annulled.

*Mr. Walter Aitken*, for Relator, submitted a brief and argued the cause orally.

12. State statute licensing automobiles as precluding imposition of municipal tax or license fee, see note in **Ann. Cas.** 1914D, 483.

*Messrs. Keeley & Keeley,* for Respondent, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

It is fundamental in this state that a city cannot license occupations for revenue, but only in the exercise of proper police regulation, under ordinances having regulatory features, and that a revenue measure, even when disguised as a regulatory measure, is void. (*Johnson* v. *City of Great Falls,* 38 Mont. 369, 370, 16 Ann. Cas. 974, 99 Pac. 1059; *Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417.) And the court is not bound by the language employed, but will look beyond the mere title or the bare allegations in the ordinance to see and determine the real object, purpose and result of the act; and ascertain whether it is not in fact a revenue measure. (*Smith* v. *Mahoney,* 22 Ariz. 432, 197 Pac. 704; *Ex parte Dees,* 50 Cal. App. 11, 194 Pac. 717.) For a general distinction between police measures and revenue measures see *Smith* v. *Mahoney, supra,* and *State* v. *Nelson,* 36 Idaho, 713, 213 Pac. 358. And if the license fees demanded do not bear some reasonable relation to the cost of regulation, the ordinance is for revenue. (*State* v. *Nelson,* 36 Idaho, 713, 213 Pac. 358; *Reilly* v. *Hatheway, supra; John Rapp & Son* v. *Kiel,* 159 Cal. 702, 115 Pac. 651; *Ex parte McCoy,* 10 Cal. App. 116, 101 Pac. 419; *In re Skelton Lead & Zinc Co.'s etc. Tax for 1919,* 81 Okl. 134, 197 Pac. 495.)

The license required by the ordinance is not an occupation license at all, but a license tax upon the automobile itself, and could only be construed to be exacted for the privilege of operating upon the streets of the city. This the city cannot require, because the state, by Chapter 154, Laws of 1923, has already provided for such a license fee permitting automobiles for hire to operate on such streets. (*Ex parte Phillips,* 64 Okl. 276, 167 Pac. 221.)

The ordinance is void because of the invalidity of provisions contained in sections 8 and 4 thereof. Section 8 of the ordinance delegates supreme authority to the city officials to determine classification and the license fee to be paid. Section

[68 Mont. 435.]

4 gives them arbitrary power to refuse to issue a license arbitrarily, and without reason, "if, in the judgment of the commission, it will be for the best interests of the city of Bozeman to refuse such license." Both of these sections are closely allied with the remainder of the ordinance and if invalid would invalidate the entire ordinance, because the ordinance would not be workable without them. Where the city charter does not give the city officers discretion in fixing a license-fee, an ordinance which imposes an occupation license and fails to fix the fee therefor, or leaves it to a city official, is void. (25 Cyc. 605, f; *State ex rel. Makris* v. *Superior Court,* 113 Wash. 296, 193 Pac. 845; *State* v. *Scott,* 115 Wash. 124, 196 Pac. 576; *State* v. *Wetz,* 40 N. D. 299, 5 A. L. R. 731, 168 N. W. 835.) As to limitation of power generally, see *Shapard* v. *Missoula,* 49 Mont. 269, 141 Pac. 544; *Sharkey* v. *Butte,* 52 Mont. 16, 155 Pac. 266; *State* v. *Billings Gas Co.,* 55 Mont. 102, 173 Pac. 799.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In August of this year a complaint was lodged with the police court of the city of Bozeman, charging that Frank E. Davis and Albert B. Erickson were carrying on the business of operating auto taxis and auto busses for hire within the city, without first having procured the license therefor required by Ordinance No. 535 of the public ordinances of the city. The police court sustained a general demurrer to the complaint, discharged the accused and dismissed the proceeding, whereupon the city applied to this court to exercise its power of supervisory control, and annul the order of the police court. An order *nisi* was issued, and upon the return a motion to quash was interposed, and the cause submitted for final determination.

The complaint filed in the police court states a cause of action if Ordinance No. 535 is in effect, but the validity of

the ordinance is assailed upon numerous grounds, and the most important of these will be considered in order.

1. It is contended that the ordinance is a revenue measure and for that reason alone cannot be upheld. If the premise is correct, the conclusion follows, for it is now settled beyond [1] further controversy in this state that a city cannot raise revenue for general municipal purposes by the imposition of license taxes. (*Johnson* v. *City of Great Falls,* 38 Mont. 369, 16 Ann. Cas. 974, 99 Pac. 1059; *Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417.)

The case last mentioned was tried upon its merits, and evidence was introduced from which it appeared conclusively that the ordinance there involved was intended to raise revenue for general city purposes, and was not designed for regulatory purposes under the police power of the city. In the case now before us there is not anything to indicate the character of Ordinance No. 535 except the terms of the ordinance, and from them alone the validity of the ordinance must be determined, so far as this proceeding is concerned.

The ordinance is entitled: "An ordinance requiring those [2] engaged in certain occupations, industries, trades, pursuits, and professions in the city of Bozeman to pay a license fee in aid of the police regulations of the city," *etc.*

Section 1 declares that "In aid of the police power and regulations of the said city of Bozeman it is hereby ordained that no person, firm, association or corporation shall conduct, operate, transact, engage in or carry on any of the industries, trades, pursuits, professions, vocations or businesses within the city of Bozeman hereinafter specified and enumerated without first applying for and obtaining a license therefor from the city of Bozeman as herein provided and if such application for license be granted, shall pay therefor as follows."

Then follows in alphabetical order an extended list of occupations with the amount of the license fee for each. To illustrate:

"Art stores, $10.00 per year.

"Auctioneers. Each firm or individual auctioneer $20.00 per year or $5.00 per day.

"Auto taxis for hire. First taxi $25.00 per year; each additional one $12.00 per year.

"Auto busses for hire. First bus $25.00 per year; each additional one $15.00 per year," and so on throughout the list.

Section 13 provides: "It is hereby declared that the industries, pursuits, professions, occupations, businesses, trades and vocations required to procure licenses under this ordinance require special regulation, inspection, control and protection under the general police power of the said city of Bozeman," *etc.*

The same section provides that all funds collected under the ordinance together with one-half of all fines and penalties collected by the police court, one-third of all building permit fees and one-third of all building inspection fees collected by the city shall be deposited in a special fund to be known as the "Protection of Life and Property Fund," and after defraying the expenses of administration of the ordinance, seven and one-half per cent of the fund shall be devoted toward the payment of the expenses of the health department, two and one-half per cent toward paying the expenses of the police court, fifty per cent toward paying the expense of the police department, and forty per cent toward paying the expenses of the fire department.

While it must be conceded that this court is not bound by the recitals in the title or body of the ordinance, in determining whether the purpose is to raise revenue or enforce reasonable police regulations, there is not anything in this ordinance which tends to contradict the declared purpose of the Act. Whether a particular business requires special police [3] inspection, regulation or control is usually a question of fact, and, since the legislative department of the city government has declared that the industries required to be licensed by Ordinance No. 535 do call for such special police

regulation, the presumption must be indulged, in the absence of any showing to the contrary, that the finding is justified by the facts.

The ordinance is not open to the objection that it does not contain any regulatory provisions—the objection that was sustained to the ordinance considered in *Los Angeles* v. *Lankershim*, 160 Cal. 800, 118 Pac. 215, and to the one involved in *Ex parte Tepper*, 60 Cal. App. 98, 212 Pac. 220.

It is true that the ordinance now under review does not [4] specify in detail the duties of the several officers who may be engaged in carrying its provisions into effect, but it is not necessary that it should do so. It does provide: "Sec. 5. Every person, firm, association or corporation licensed under the provisions of this ordinance shall be subject to regulation, inspection, control and supervision under the general police power of the city of Bozeman and of all of the ordinances now in force or which may hereafter be adopted in aid of such police power and regulation." And this is further convincing evidence that the ordinance is intended as a police regulation.

A distinction between a license tax and a tax proper or a [5] revenue measure is stated as follows: "Where the fee is imposed for the purpose of regulation and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper imposed by virtue of the police power; but when it is exacted solely for revenue purposes without any further condition it is a tax." (17 R. C. L. 479.)

The general structure of this ordinance, and the particular purposes to which the funds collected under it are devoted, tend strongly to give to it the character of a police regulation; at least it cannot be said from an inspection of the ordinance itself that it is a revenue measure. (*John Rapp & Son* v. *Kiel*, 159 Cal. 702, 115 Pac. 651.)

2. It is contended further that, if the ordinance be con- [6] sidered as a police regulation, it is so unreasonable in the amounts exacted that it is void. It is the general rule

that the license fee required by an ordinance designed as a police regulation must not exceed the cost of issuing the license and the additional cost of inspection and supervision. However, this rule is subject to the qualification that the licensing authority is not limited, in fixing the amount of the fee, to the expense of direct regulation alone, but may adjust the fee to cover the cost of all incidental consequences which may reasonably subject the public to expense as a result of the conduct of the business licensed (17 R. C. L. 539). The nature of the business and the necessity, character and extent of the regulations are the dominating elements which determine the reasonableness of the fee to be paid. (3 McQuillin on Municipal Corporations, sec. 1002; 17 R. C. L. 544.)

Cases may arise wherein it is possible for a court to say, as a matter of law, that a given fee is out of all reasonable proportion to the expense of proper police inspection and supervision, as was done in *Smith* v. *Mahoney,* 22 Ariz. 432, 197 Pac. 704, but such is not the case before us. In considering a somewhat similar ordinance under like circumstances, the supreme court of Washington said: "The amount of the license fee fixed by the ordinance for the business of pawnbroking is $100 per annum. There is nothing in the record to show what the actual costs are, or what a reasonable charge would be, for enforcing the regulations prescribed, and we are asked to say, as a matter of law, that the amount fixed is so far in excess of any sum that could be legitimately charged for regulating the business as to enter the domain of taxation. We do not feel that we are authorized to do this in the case before us. It is not doubted that the business of pawnbroking is a proper subject of police regulation, nor is it doubted that it is within the province of the municipal authorities to make the business bear the costs of such regulation. As these costs must be prescribed in advance, they must of necessity be based upon estimates which it is the right and duty of the municipal authorities to make. The courts cannot, therefore, on any mere difference of opinion as

to the amount necessary to meet these costs, say that they are excessive. They must be shown to be so by evidence, or else they must be so exorbitant and arbitrary as to leave no room for two opinions on the matter—so exorbitant and arbitrary as to show that they could not have been based upon any possible estimate of the probable cost. The amount of the fee in question here is not subject to these objections. It cannot be said that it will exceed even the actual cost of surveillance, much less can it be said it is excessive or arbitrary.'' (*City of Seattle* v. *Barto*, 31 Wash. 141, 71 Pac. 735.) So likewise in [7] this instance, the presumption is that the fee is reasonable until the contrary appears (17 R. C. L. 537), and in the absence of anything in this record to indicate that the fee exacted from persons engaged in the business of operating motor vehicles for hire exceeds the reasonable cost of proper supervision of the business, the ordinance is not open to the charge that it is unreasonable.

3. It is idle for counsel to contend that the motor vehicle [8] business, when conducted for hire, is not subject to police regulation, or that the business does not require police regulation. Chapter 154, Laws of 1923, in force prior to the enactment of Ordinance No. 535, has to do with the licensing and regulation of the motor vehicle business for hire upon the public highways of the state. Section 3 of the Act provides, among other things: ''Cities and towns may enact and enforce reasonable regulations and regulatory ordinances including the imposing of regulatory licenses not destructive of the general purposes of this Act.'' Our attention is not directed to any provision of Ordinance No. 535 which is even inconsistent with the purpose of Chapter 154 above.

4. Again, it is insisted that, if it were the purpose of the [9] city of Bozeman to license the business of operating motor vehicles for hire, Ordinance No. 535 fails to carry that intention into effect. It is argued in this behalf that at best the ordinance only assumes to license each auto taxi and auto bus and not the business of operating such vehicles. The same

objection was made to the ordinance involved in *Kentz* v. *City of Mobile,* 120 Ala. 623, 24 South. 952, but the court disposed of it by saying: "It is manifest that the business or occupation tax referred to is required to be determined by the number of drays or vehicles that are used in the transportation of goods, and that the number of drays and other vehicles are referred to, not to impose a tax on them as property, but simply, to arrive at a proper ascertainment of the just amount of the license tax in each particular case. A party engaged in business in the city, and employing drays or other vehicles for the transportation of their merchandise, or parties using vehicles at the public stands, may use one or many of them, and different persons may use more or fewer of them than other persons engaged in the same business. The number so used, therefor, was a proper, and perhaps as good a basis for determining the amount to be paid for the license to do the business, as any other—if not the best." In 3 McQuillin on Municipal Corporations, section 1010, it is said: "A license tax of so much per vehicle is a tax against the owner and not a property tax against the vehicle and is proper as a basis for determining the amount to be paid by the owner."

5. Again, it is insisted that the ordinance is void in so far **[10, 11]** as it attempts to exact a license fee exceeding $10 for each vehicle. Section 5039, Revised Codes of 1921, provides: "The city or town council has power: * * * 3. To license all industries, pursuits, professions and occupations, and to impose penalties for failure to comply with such license requirements; but the amount to be paid for such license must not exceed the sum required by the state law when the state law requires a license therefor."

Chapter 154, Laws of 1923, above, confers upon the state Railroad Commission general supervision of rates to be charged and facilities and service to be furnished by transportation companies engaged in operating motor vehicles for hire upon the highways of the state (section 3). It provides also that "No transportation company, as defined in section

1 of this Act shall hereinafter operate any motor vehicle, motor truck, motor trailer, bus trailer, semi-trailer or other trailer in connection therewith for the purpose of transportation of persons or property for compensation on any public highway of this state without first having obtained from the Railroad Commissioners of Montana a certificate which shall set forth the special terms and conditions under which permission is granted to operate any of the vehicles above mentioned." (Section 4.) The Act provides further: "The Railroad Commission of Montana is hereby authorized and empowered in the regulation of the persons and corporations as defined in this Act, to require the payment of an annual license fee to be paid by each transportation company doing business within the meaning of this Act, in accordance with the number and weight and size of such vehicle or vehicles owned or operated by it, such license fee not to exceed the sum of ten dollars ($10) per vehicle, to be imposed for the purpose of defraying the expenses of administration of this Act and the regulation of the businesses herein described." (Section 8.)

Waiving aside for the present the question of the power of the legislature to delegate to the Railroad Commission the authority to exact a license fee from anyone and to determine the amount thereof within the limit indicated in section 8 above, it is to be observed that the Act itself does not require that a license fee be exacted at all, and does not attempt to fix the amount which the commission may exact beyond designating the maximum fee which may be charged. There is nothing in this record to indicate that the Railroad Commission has exercised the power (if power it has) to impose a license fee upon transportation companies engaged in operating motor vehicles for hire. Under these circumstances it cannot be said that the license fee prescribed by Ordinance No. 535, for engaging in the business of operating motor vehicles for hire, exceeds the sum required by the law of the state as a license fee for the same business. It is no objec-

tion to the validity of the ordinance that the state may also license the business of operating motor vehicles for hire. The [12] power to license any given business subject to police regulation may be exercised concurrently by the state and municipal government. (*Johnson* v. *City of Great Falls*, above; 17 R. C. L. 560.)

6. Finally it is urged that the ordinance operates retro- [13] actively, and for that reason cannot be upheld. The ordinance was not enacted until May 14, 1923. It prescribes the license fee for those engaged in the business of operating motor vehicles for hire upon a yearly basis. It is insisted that the city cannot exact the entire fee prescribed by the ordinance for the year 1923 and, since no provision is made for apportioning the amount to be paid for the remaining portion of that year, the ordinance is void in so far as it undertakes to authorize the imposition and collection of the fee for the entire year 1923. The same attack was made upon the income tax law of Wisconsin, and the supreme court of that state disposed of it summarily as follows: "One further objection we overrule here without comment, for the reason that it seems very unsubstantial, namely, the objection that the law is retroactive and void, because assessed on incomes received during the entire year 1911, while it did not go into effect until July 15th of that year." (*State* v. *Frear*, 148 Wis. 456, Ann. Cas. 1913A, 1147, L. R. A. 1915B, 569, 606, 134 N. W. 673, 135 N. W. 164.) The objection now under consideration is equally without merit. The ordinance is not retroactive (36 Cyc. 1201), and the accused were not charged with operating without a license previous to May 14, 1923, but were charged with operating without the necessary license on August 22, 1923, long after the ordinance became effective.

The ordinance appears to be proof against any of the attacks made upon it. Its validity will be presumed in the first instance (2 McQuillin on Municipal Corporations, sec. 794), and until that presumption is overcome it is the duty of the police court to uphold it.

The order of the police court sustaining the demurrer to the complaint is annulled.

*Order annulled.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, STARK and GALEN concur.