MR. JUSTICE WEBER
delivered the Opinion of the Court.
This is an appeal from an Eighth Judicial District, Cascade County decision upholding the constitutionality of a Great Falls city ordinance. The ordinance establishes a $300 per booth annual license fee on video booths used to view adult movies. We affirm.
The issue is whether the trial court erred in concluding that the $300 annual fee for adult movie video booths was reasonable as a regulatory measure and therefore not a violation of the First Amendment of the United States Constitution.
In January 1983 the City Commission of Great Falls adopted Ordinance No. 2311 “providing for the establishment of license fees to be paid by operators of coin-operated devices depicting sexual activities.” The annual license fee imposed under this ordinance is $300 per booth. At the time of the trial of this case, there were a total of 59 booths in four adult bookstores in the City of Great Falls.
The booths are small cubicles in which customers view movies on a television or movie screen. To view the movie, the customer is required to deposit money in a coin box. It has not been argued that any movies shown were obscene or otherwise illegal, but they are admittedly sexually explicit.
This case began when the City of Great Falls (City) filed actions against two owners of adult bookstores for failing to pay the annual license fee. The actions were consolidated, together with another case filed by a third adult bookstore owner who was challenging the constitutionality of the ordinance. A trial was conducted at which the City presented evidence of actual and anticipated costs justifying the fee. After considering the evidence before it, the District Court concluded that the City had met its burden of proving that the $300 fee is reasonable and “designed to further valid, non-speech-related municipal interests.” On appeal, the bookstores argue that the City has failed to prove that the $300 fee is justified by the costs established, or that it is either nominal or imposed to defray the expenses of policing the booths.
Did the trial court err in concluding that the $300 annual fee for adult movie video booths was reasonable as a regulatory measure *294 and therefore not a violation of the First Amendment of the United States Constitution?
The First Amendment to the Federal Constitution provides that “Congress shall make no law . . . abridging the freedom of speech, or of the press.” This right of free speech is protected from state infringement through application of the Due Process Clause of the Fourteenth Amendment. Grosjean v. American Press Co. (1936), 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660. Although many persons find them distasteful, booths for viewing adult oriented films which are not obscene or otherwise illegal are protected by the First Amendment. A license fee on such protected activities will pass constitutional muster only if the fee is nominal and imposed as a regulatory measure to defray the expenses of policing the activity in question. Murdock v. Pennsylvania (1943), 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292. These expenses may include more than routine processing of licenses; among permissible costs is the cost of “protecting those on the streets and at home against the abuses of solicitors.” Murdock, 319 U.S. at 116, 63 S.Ct. at 876, citing Cox v. New Hampshire (1941), 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049.
The District Court cited cases involving fees on adult video booths and expanding the statement in Murdock that the allowable license fee may include the costs of policing the activity being licensed. In Bayside Enterprises, Inc. v. Carson (D.C.Fla. 1979), 470 F.Supp. 1140, 1149, the court stated:
“As it now stands, the Code will merely serve perfectly valid municipal interests in public safety and welfare, most notably the presence of safe and sanitary conditions and the prevention of criminal conduct. These interests are wholly unrelated to suppressing free speech and, significantly enough, the plaintiffs have presented no evidence that furthering these interests through the Code’s fee system would have the effect of suppressing free speech. Put another way, there is no evidence before this Court that these fees will drive the plaintiffs out of business or in any way hamper their ability to communicate through purveying their books and films. In sum, the City has met its burden of proving that these fees are reasonable, and that they are designed to further valid, nonspeech-related municipal interests. Accordingly, they must be held constitutional.
The District Court also relied upon a North Dakota case in which a $300 per booth license fee for adult video booths was upheld. In City of Minot v. Central Ave. News, Inc. (N.D. 1981), 308 N.W.2d 851, 860, the court stated:
*295 . . Central does not point to, nor has our own research unearthed, authority to the effect that a city must, before implementing a licensing scheme with a fee, demonstrate what the administrative costs would have been in the past had the licensing scheme been in effect. Moreover, we believe that Central’s reliance upon Bayside Enterprises, Inc. v. Carson, 450 F.Supp. 696 (M.D.Fla. 1978), to support its contention is misplaced. In Bayside, the licensing fee in question was struck down not because it was speculative, but because the City of Jacksonville’s projected costs of enforcing a newly enacted licensing ordinance for adult bookstores were unreasonable. Thus, regarding the licensing fee at issue in the instant case, we are left to determine only its reasonableness.”
Based on evidence of anticipated costs of routine policing of the video booths, together with anticipated costs of proceeding on violations of the law, the court upheld the $300 per booth annual fee.
In the present case, the District Court’s findings and conclusions outline the testimony given at the hearing as to costs of regulating and policing the booths. The evidence established past police department costs of $44 per year for routine investigation to verify licensing requirements; $1,408 in expenses incurred in 1982-83 for a stakeout related to an outbreak of venereal disease traced to one of the booths; and $220 in expenses for a child pornography check. An experienced detective testified on estimated future police department costs and expenses relating to adequate policing of the booths. He estimated that it would cost $1,786.88 per year to police the booths to insure adequate enforcement of the State child pornography law, Section 45-5-625, MCA; $8,064 per year to police the booths to insure adequate enforcement of the State deviate sexual conduct law, Section 45-5-505, MCA; and $2,688 per year to police the booths to insure adequate enforcement of the State obscenity law, Section 45-8-201, MCA. The officer testified that at the time of the hearing the deviate sexual conduct law and the obscenity law were not being enforced in the City of Great Falls. A second law enforcement officer testified on the need for enforcement of the laws prohibiting minors in these establishments.
The District Court also heard testimony that City-County health enforcement costs and expenses for the booths in 1982-83 were $2,155.19, relating to the venereal disease traced to a video booth. There was uncontroverted testimony of homosexual and heterosexual intimate conduct between persons either sharing a booth or using “glory holes” in the walls between the booths. Yearly health en *296 forcement costs were set at $551.65, plus an anticipated increase in costs of monitoring and follow up contact tracing resulting from sexual contact in the booths and the risk of sexually transferable communicable diseases. Administrative licensing expenses were established as $18.29 for the cost of issuing the original license for each establishment and estimated annual renewal expense of $29.44 for each establishment.
This Court has indicated that estimates of future expenses may be included for purposes of setting a license fee. State v. Police Court (1923), 68 Mont. 435, 443-44, 219 P. 810, 812. Until law enforcement efforts have been in effect for a substantial period of time, we recognize that the costs of enforcement cannot precisely be established. The cost estimates provided by the City total over $13,000 per year, plus the anticipated increased health department costs. As stated previously, health department costs were over $2,000 in 1982-83 from one outbreak of venereal disease. At $300 per booth, the city will receive income of $17,700 per year on 59 booths. We conclude that the lower court was correct in not requiring proof of expenses precisely equaling the amount which will be collected on 59 video booths.
The bookstores also argue that it was not proven that enforcement of the child pornography law was in any way connected with operation of the video booths. The need for enforcement of the child pornography law is not eliminated because no child pornography has been found in the booths in the past. That conclusion would ignore the very nature and purpose of the booths — to show sexually titillating films for all manner and persuasion of customers.
The City has proposed random checks by plainclothes officers to enforce the deviate sexual conduct statute. Our conclusion that this proposal is reasonable is not changed by the bookstores’ proposal of alternative methods, which they say infringe less on the right of free speech. Without going into detail, we conclude that the enforcement methods proposed by the bookstores would not be effective.
There was no evidence that the $300 per booth fee will drive the bookstores out of business or prohibit them from communicating through the films. Although the bookstores have questioned some of the enforcement cost figures, we affirm the holding of the lower court that the City has submitted sufficient evidence to justify the $300 per booth fee. We affirm the conclusion of the District Court that the City has met its burden of proving that the fee imposed is *297 justified by the costs established and is set at an amount designed to defray the expenses of policing the booths.
Affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, MORRISON and GULBRANDSON concur.